**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

NURLAN NURKAN UULU,

Petitioner,

v.

LEONARD ODDO, ET AL.,

Respondents.

3:26cv1611
ELECTRONICALLY FILED

**MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART**
**<u>PETITIONER'S VERIFIED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)</u>**

Pending is Petitioner's Verified Petition for Writ of Habeas Corpus. (Doc. 1)

## I. BACKGROUND

On August 18, 2026, Petitioner filed his habeas petition. (Doc. 1).

On September 28, 2026, Respondents filed their response in opposition to Petitioner's habeas petition. (Doc. 6).

On October 1, 2026, Petitioner filed a Reply to Respondent's Opposition, reaffirming his position. (Doc. 7).

Accordingly, Petitioner's habeas petition has been fully briefed and is ripe for adjudication.

## II. PARTES' POSITIONS

Petitioner's habeas petition asserts the following facts, which Respondents do not dispute: (1) Petitioner is a native of the Soviet Union, in what is today Kyrgyzstan; (2) Petitioner entered the United States ("U.S.") in 2020 on a valid visitor visa and applied for asylum before his visa expired; (3) Petitioner pleaded guilty to Theft by Unlawful Taking-Movable Property under 18 Pa. C. S. § 3921(a) and was sentenced to 84 months of probation; (4) on April 9, 2025, Petitioner pleaded guilty to 18 Pa.C.S. § 3921(a), Theft by Unlawful Taking-Movable Property, and served six months of his sentence before he was paroled on October 15, 2025; (5) on

October 15, 2025, Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner under 8 U.S.C. 1226(c) after he was paroled from Pennsylvania state custody; (6) on February 13, 2026, Petitioner was ordered removed by an Immigration Judge ("IJ"); (7) on March 2, 2026, Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"); (8) on June 16, 2026, Petitioner timely filed his appeal brief; (9) if Petitioner loses his appeal, Petitioner will appeal the decision to the United States Court of Appeals for the Third Circuit; and (10) Petitioner currently is detained by Respondents at the Moshannon Valley Processing Center ("MVPC").

Petitioner's habeas petition contains two (2) claims. First, Petitioner claims that his "detention violates the Due Process Clause because it is not rationally related to any immigration purpose and because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner. [Petitioner] is not a danger as he has no violence (sic.) criminal history, nor is he a flight risk given his long residence in the United States and ties to the United States in the form of his wife and three-year-old United States citizen daughter" (Count One). (*Id.* at 32-33). Second, Plaintiff claims that under the analysis set forth by the Court of Appeals for the Third Circuit in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020) ("*German Santos*"), his prolonged detention without a constitutionally adequate bond hearing violates the Due Process Clause of the Fifth Amendment (Count Two). (*Id*. at 33-35).

Petitioner's Prayer for Relief requests that the Court:

a) Assume jurisdiction over this matter;

b) Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

c) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

d) Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody;

e) In the alternative, issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody on his own recognizance or under parole, bond or reasonable conditions of supervision, on the ground that his continued prolonged detention by ICE violates his due process rights;

f) Or, in the alternative, conduct an individualized bond hearing at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner's continued detention is justified because he poses a danger of a flight risk that cannot be remedied by other conditions of release;

g) Or, in the alternative, order an immediate and constitutionally adequate bond hearing before an immigration judge at which DHS bears the burden to demonstrate that Petitioner's continued detention is necessary, consistent with the Third Circuit's decision in *German Santos*, and that the Immigration Judge consider Petitioner's ability to pay a bond and alternatives to detention;

h) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

i) Grant such further relief as this Court deems just and proper.

(*Id*. at 35-36).

In response to Petitioner's habeas petition, Respondents first argue that because Petitioner has been convicted of a theft by unlawful taking under 18 Pa. Cons. Stat. § 3921(a), which is an aggravated felony, he is subject to mandatory detention under 8 U.S.C. § 1226(c) ("Section 1226c)") and this Court "lacks jurisdiction to entertain a request for immediate release." (Doc. 6 at 4-5) (citations omitted).

Respondents further argue that Petitioner has not established, and cannot establish, under the test set forth by the Court of Appeals for the Third Circuit in *German Santos, supra*., that Petitioner's detention has become unreasonable, and thus, the Court should deny Petitioner's request for a bond hearing. (*Id.* at 5-8). "In sum, a review of the four *German Santos* factors

shows that Uulu's removal proceedings are near completion, because he has been ordered removed by an IJ and his current appeal at the BIA has been pending for months. Uulu's detention of eleven months is not unduly long in the circumstances. And Uulu's conditions of confinement cannot be held against Respondents." (*Id*. at 8).

Respondents also posit that if this Court orders a bond hearing, an IJ should hold the hearing, as opposed to this Court. (*Id.* at 8-10).

In his reply, Petitioner first reiterates his position that his detention is unreasonable under the analysis set forth in *German Santos, supra*. (Doc. 7 at 2-4).

Petitioner then addresses footnote 2 in Respondents' Response:

> First, the writ of certiorari previously granted in *Genalo v. Black* has been dismissed. *Genalo v. Black*, No. (R46-21 / OT 2025), 2026 WL 2752021 (U.S. Sept. 16, 2026). Second, as Judge Haines aptly noted, "the spurious leap made by Respondents from a procedural request for a bond hearing to a substantive request because of the topics to be reviewed in the bond hearing is not persuasive. Moreover, the caselaw cited to for Respondents' position, *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1 (2003), does not correspond to this case in any way." *Chan v. Bondi*, No. 3:25 CV 298, 2026 WL 388605, at *2 (W.D. Pa. Feb. 12, 2026). Third, Respondents' claim that "unless removal proceedings are a 'ruse' or a 'sham', a non-citizen subjected by statute to mandatory detention during such proceedings has no substantive right to bond and hence no procedural right to a bond hearing" asks this Court to ignore clear binding Third Circuit precedent in *German Santos. F.B. v. Oddo*, No. 3:26-CV-717, 2026 WL 1265352, at *2 (W.D. Pa. May 8, 2026).

(*Id*. at 4-5).

Finally, Petitioner reiterates his request that this Court conduct any bond hearing it orders. (*Id.* at 5-6).

## III. FINDINGS AND CONCLUSIONS

The assessment of whether Petitioner's detention has been unreasonably prolonged in violation of Petitioner's rights under the Fifth Amendment's Due Process Clause is accomplished by examining the "nonexhaustive list of four factors" set out by the Court of Appeals for the

Third Circuit in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). *German Santos*, 965 F.3d at 213. *See id.* at 214 (explaining: "'[W]hen detention becomes unreasonable, the Due Process Clause demands a bond hearing'.") (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011)). As such, the Court will evaluate the following four *German Santos* factors to determine whether Petitioner's detention since October 15, 2025 has become unreasonable such that Petitioner is entitled to a bond hearing: "(i) the duration of detention; (ii) whether the detention is likely to continue; (iii) reasons for the delay; and (iv) whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *Id.* at 210–11.

When considering whether detention has become unreasonable: "The most important factor is the duration of detention. While there is no bright-line threshold of time that permits a court to presume that detention has crossed the line from reasonable to unreasonable, detention does become '"more and more suspect"' the longer it continues." *Foula Bah, v. Oddo*, Civ. No. 3:26-1393, 2026 WL 2561261, at *3 (W.D. Pa. Aug. 31, 2026) (quoting *German Santos*, 965 F.3d at 211 (quoting *Diop v. ICE/Homeland Sec*., 656 F.3d 221, 234 (3d Cir. 2011)). *See also Niangane v. Mullin et al*., Civ. No. 3:26-815, 2026 WL 2280905, at *3 (W.D. Pa. Aug. 7, 2026) (explaining: "The first and 'most important' factor is the duration of detention") (quoting *German Santos*, 965 F.3d at 210). Thus, in *German Santos*, where the petitioner was being held pursuant to Section 1226(c), the Court of Appeals for the Third Circuit noted: "in *Chavez-Alvarez*, we held that a lawful permanent resident's detention became unreasonable sometime between six months and one year. *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015).)

Here, where Petitioner has been detained for more than one year, the Court finds that the first *German Santos* factor weighs in favor of Petitioner. *See also Foula Bah*, 2026 WL 256126, at *3 (concluding that the *German Santos* duration factor weighed in favor of the petitioner where he had been detained for more than 11 months).

The second factor to consider is "whether the detention is likely to continue," *i.e.*, what is the procedural posture of Petitioner's removal proceedings. *German Santos*, 965 F.3d at 211. "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id*.

With respect to this query, the Court takes judicial notice of the Automated Court Information page of the Executive Office for Immigration Review ("EIOR"), which indicates that: (1) on February 13, 2026, an immigration judge ordered Petitioner's removal from the U.S.; and (2) on March 2, 2026, Petitioner filed an appeal of the IJ's decision to the BIA; (3) on June 2, 2026, Petitioner filed his brief with the BIA; (4) the briefing schedule has expired and DHS did not file a brief; and (5) Petitioner's appeal remains pending. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited November 6, 2026). Further, Petitioner has stated that if the BIA affirms the IJ's decision, he will appeal the decision.

Given the current procedural posture of Petitioner's removal proceedings, as detailed above, the Court finds that Petitioner's detention is likely to continue for the foreseeable future, *i.e.*, it is unlikely to end soon, and thus, this *German Santos* factor weighs in Petitioner's favor. *See German Santos*, 965 F.3d at 212 (concluding that this factor weighed in the petitioner's favor where the petitioner was awaiting BIA decision and potential Third Circuit review); *Foula Bah*, 2026 WL 2561261, at *3 (concluding that this *German Santos* factor weighed in favor of the petitioner because "[a]lthough the parties have already finished briefing before the BIA . . . the

BIA has not yet issued a decision, and upon receiving a decision, there is a possibility of further appeal to the Third Circuit.”).

The third *German Santos* factor is the reason for the delay. Notably:

> in assessing the impact of the reasons for delay upon the reasonableness of detention, a petitioner's “appeals and applications for discretionary relief [are not held] against him[.]” [*German Santos*, 965 F.3d at 212]. However, neither are delays or alleged errors held against the government “[a]bsent carelessness or bad faith[;]” for “[n]o system of justice can be error-free, and those errors require time to fix.” *Id.* (citing *Diop*, 656 F.3d at 234).

*Foula Bah*, 2026 WL 2561261, at *3.

Here, Respondents do not argue that Petitioner has been the reason for any delay in his removal proceedings and there is no allegation by Petitioner nor evidence of record that shows Respondents have acted carelessly or in bad faith with respect to Petitioner’s removal proceedings. Accordingly, the Court finds that this *German Santos* factor is neutral as to both parties. *See id.* (explaining: “Here, neither party alleges that Respondents have improperly delayed the proceedings, but Respondents allege that Petitioner’s request for a one-month continuance before the BIA should be held against him. Petitioner’s one minor continuance, however, cannot ‘credibly be considered as a factor in the length of his detention’ because the Court would find his detention unreasonable even at ten months (his current detention length minus the length of the continuance” and concluding: “As such, this factor is neutral as to both parties.”) (citations omitted).

Finally, the fourth *German Santos* factor is whether the detainee’s conditions of confinement are “meaningfully different from criminal punishment.” *German Santos*, 965 F.3d at 211.

When assessing the reasonableness of a petitioner’s detention, “we cannot ignore the conditions of confinement.” *Id.* at 212–13 (citing *Chavez-Alvarez*, 783 F.3d at 478). As

explained by the *Foula Bah* court:

> In particular, a district court must examine the factual circumstances particular to the petitioner in order to assess whether "his detention is indistinguishable from criminal punishment[,]" "[d]espite its civil label[.]" *See* [*German Santos*, 965 F.3d] at 210.[4]
>
> [footnote 4: A court in this District previously recognized that conditions at Moshannon Valley Processing Center may resemble prison-like confinement. *See, e.g.*, *C.B. v. Oddo*, 2025 WL 2977870, at *7 (W.D. Pa. Oct. 22, 2025).]

*Foula Bah*, 2026 WL 2561261, at *3.

With respect to this *German Santos* factor, Petitioner has filed an 8-page Declaration, wherein he describes, under penalty of perjury, the conditions he has experienced while being detained at MVPC since October 15, 2025, which include the following: (1) "I have to wear a special color ID that shows I have a conviction at Moshannon;" (2) "I have . . . been punished with isolation at Moshannon. I was put into isolation for four days when I tried to break up a fight because the facility thought I was fighting. It took four days for Moshannon to look at the recording and see I didn't fight anyone;" (3) "I am not allowed to have contact visits with my family. I have a three-year-old little girl who I have not been able to hug since October 2025. . . . All family visits at Moshannon are separated by glass and contact is not allowed. I asked Moshannon if I could have contact visits with my daughter but the facility denied my request. My attorney also made a formal request to the Warden to see if he would approve contact visits but the Warden told him the facility does not allow contact visits because it is not safe for the detainees or the guards;" (4) "My family can't schedule visits at Moshannon, they just have to show up and hope there is enough room for us to meet. If it's a busy day, then they drove five hours for nothing. They can also only visit me on certain days;" (5) "In Moshannon, I live in a room, like a big hall, with seventy-three other people. There are thirty-six bunkbeds in a confined

area and a common area. There is no privacy. It is very loud at night so most people only sleep in the morning. The bathroom is also attached to our living area and it smells so bad all the time. I have to share three urinals and three toilets with all of these people. There are nine shared showers and there is no private area to get undressed, so everyone has to be naked around each other. The common area has tables and chairs, but there are not enough tables or chairs for everyone so in the morning you have to wake up early and get lucky to claim a chair for the day. There used to be enough chairs, but something happened and Moshannon punished us by taking away our chairs and never brought them back. There are also only thirteen tablets for all seventy-four of us. I have to wait in line to talk to my family, and people watch me and bother me and try to see who I am talking to when I use the tablet. There are often fights over who gets to use a chair or use a tablet, I have seen people yell at each other and even physically hit each other;" (6) "we only get one roll of paper towels a day for all seventy-four of us. There is also not enough toilet paper. Sometimes when I ask for more toilet paper, the guards just stare at me and ignore me, or tell me they are too busy;" (7) "At Moshannon . . . [c]leaning is only done once a day in the morning, and it is done by detainees who want to work the cleaning job. No one wants to work the cleaning job because it pays so little, maybe around $1 per day. Sometimes no one cleans because no one wants to do it, so it just stays dirty for days. In some halls, there are no regular cleaners. Once in my hall, after no one wanted to clean, the guards forced us to clean. The guards took away our tablets, which we need to communicate with our families, until we cleaned. Many people were still asleep so only a few of us had to clean the whole hall for a couple of days so we could use tablets that day. I try to clean on my own, but the disinfectant spray bottles are only filled in the morning and are empty by the afternoon. The bathrooms are so dirty and I can't even clean the toilet seat since the bottles are usually empty;" (8) "When I got to

Moshannon, the uniform I was given was dirty and used too;" (9) "I get sick a lot at Moshannon a lot because there are so many people in one confined space and it is not clean.;" (10) "The food is extremely poor quality at Moshannon too. Everyone is constipated all the time because we barely get any vegetables or fruit. I get one banana a week. This is a really big problem, its (sic). very painful and when I finally can go to the bathroom there is no toilet paper. We often have to throw out about half of our food everyday (sic.) because its (sic.) bad. Every day we basically only get rice and beans, and very little meat. When we do get meat, its usually soy meat. I have to supplement my food by buying food from the commissary, which is really expensive;" (11) "in Moshannon I spend at least twenty hours a day in my hall. One big reason for this is that Moshannon doesn't have programs;" (12) "At Moshannon, the only time we get to leave the hall is to go outside. This happens twice a day, two hours in the morning—around 7 a.m. to 9 a.m.— and two hours in the afternoon— around 1 p.m. to 3 p.m. If you miss one of the opportunities to go outside, then you are stuck in your hall almost all day. There are three yards outside, one big and two small. When we go outside, we go out with other halls, 444 people total at one time. The yards are not big enough for this many people and I can barely move around, there is almost no room to do anything besides stand;" (13) "At Moshannon . . . We have only thirteen tablets for seventy-four people. The tablets cost 5 cents per minute to use, including for games, music, movies, and text messages. It costs my wife 35 cents to send me one message. It also costs 21 cents a minute for a video call, and 8 cents a minute for an audio only call. All calls are monitored, and there is no privacy since I have to make the calls around other people. My wife cannot call me, I have to call her, and she has to send me money so I can call her. I also have no access to email;" and (14) "I want to get a job here, but Moshannon has to approve you for a job. I asked to work in the kitchen a few months ago, which pays $4 a day. I finally got approved

recently for the job, and started to work. However, in July Moshannon told us our pay would be reduced to $1 per day, instead of $4 per day. The pay is so low, I don't know if I will continue to work." (*Id.*)

To the contrary, Respondents contend:

> At MVPC, Uulu's conditions of confinement were no different from those of hundreds of other detainees and were not akin to criminal punishment. Though Uulu provides an affidavit describing the conditions of his detention, noting that he preferred his detention at the state correctional facility more than at MVPC, the conditions to (sic.) not make his detention akin to criminal punishment. Indeed, unlike in *German Santos*, Uulu is not "detained in prison alongside convicted criminals," but instead is held at an immigration-specific processing center; also unlike in *German Santos*, Uulu is not confined to his cell for twenty-three hours per day. 965 F.3d at 212– 13 (emphasis added).

(Doc. 6 at 8).

The Court finds, based on the facts set forth in Petitioner's Declaration in their totality, that Petitioner has sufficiently established that his conditions of confinement at MVPC have not been "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 211. *See Nunez v. Oddo*, Civ. No. 3:25-143, 2025 WL 2443437, at *5 (W.D. Pa. Aug. 25, 2025) (Kelly, J.) (concluding: "Petitioner is not free to leave MVPC, and has provided sufficient contemporary, persuasive evidence in his declaration that his conditions of confinement are like those of a prison. Respondents' attorney argument is insufficient to rebut Petitioner's actual evidence. Respondents had the opportunity to submit declarations or other up-to-date evidence in support of their argument, but chose not to do so.") (citation omitted). Accordingly, this *German Santos* factor weighs in favor of Petitioner.

In conclusion, the Court finds, upon balancing the *German Santos* factors as applied to this case, where three (3) of the *German Santos* factors weigh in Petitioner's favor, including the most important one, duration of detention, and one (1) *German Santos* factor remains neutral,

that Petitioner's detention has become unreasonable, and therefore, due process entitles Petitioner to a bond hearing where "[t]o justify [Petitioner's] continued detention," "the Government must put forth clear and convincing evidence" to "support a finding that continued detention is needed to prevent him from fleeing or harming the community" and "[i]f it cannot, it must release him." *German Santos*, 965 F.3d at 213-14 (citing *Chavez-Alvarez*, 783 F.3d at 477-78). *See also Foula Bah*, 2026 WL 2561261, at *4 (concluding: "[B]ecause two factors weigh in Petitioner's favor, while two remain neutral, the Court finds, based upon the specific facts of the detention before it and underneath the standard set within *German Santos*, that Petitioner's detention under § 1226(a) has become unreasonable. Thus, the burden of proof at the initial bond hearing will be placed upon the Government. 'To justify [Petitioner's] continued detention,' 'the Government must put forth clear and convincing evidence' to 'support a finding that continued detention is needed to prevent him from fleeing or harming the community[;]' '[i]f it cannot, it must release him.' *German Santos*, 965 F.3d at 213-14 (citing *Chavez-Alvarez*, 783 F.3d at 477-78).").

Accordingly, the Court GRANTS Petitioner's habeas petition and ISSUES the writ on these terms: (1) Respondents shall cause Petitioner to be taken to a neutral immigration judge of the Executive Office of Immigration Review for an individualized bond hearing to occur within 30 days of this Order, or else release Petitioner by such date; (2) Respondents shall ensure that such a hearing includes the required due process, *i.e.*, at a minimum, factfinding based on a record produced before the decisionmaker and disclosed to Petitioner; an opportunity to make arguments on the Petitioner's behalf; and the right to an individualized determination of Petitioner's interests. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022); and (3) Petitioner shall be responsible for securing the

necessary transcripts and record of the bond hearing. The Court trusts the immigration judge to comply with this Order and ensure that Petitioner is provided due process, and therefore, the immigration judge shall explain his or her individualized determination on the record. *See Kamara v. Atty Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005). Further, at the ordered individualized bond hearing, the burden shall be placed on Respondents to prove, by clear and convincing evidence, that continued detention is warranted to prevent Petitioner from fleeing or harming the community, and if they cannot, Petitioner must be released.

Otherwise, Petitioner's habeas petition is DENIED, including to the extent that Petitioner seeks an Order that: (1) directs Respondents either to immediately release Petitioner from custody or alternatively, directs Respondents to release Petitioner from custody on his own recognizance or under parole, bond or reasonable conditions of supervision; (2) states that this Court will conduct an individualized bond hearing at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner's continued detention is justified because he poses a danger of a flight risk that cannot be remedied by other conditions of release; (3) mandates that at the ordered individualized bond hearing, the Immigration Judge consider Petitioner's ability to pay a bond and alternatives to detention; and (4) awards Petitioner reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA").

More specifically, the Court will not, at present, order the IJ to consider detention alternatives and Petitioner's ability to pay at the ordered bond hearing. Rather, the Court will "allow the IJ to determine in the first instance whether the additional procedural safeguards requested by Petitioner are necessary or appropriate. In the event that Petitioner believes the IJ has not afforded him constitutionally adequate procedures, he may apply to this Court for further

relief." *Brito Rivero v. Oddo*, Civ. No. 3:26-776, 2026 WL 1382246, at *2 (W.D. Pa. May 18, 2026) (Fischer, J.).

Furthermore, given that under *German Santos*, *supra.*, a case specific analysis is required, the Court finds that Respondents' position was substantially justified in this case, and thus, the Court will not award Petitioner reasonable attorney's fees and costs pursuant to the EAJA.

SO ORDERED this 6th day of November, 2026.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel of Record